**Thomas F. FRADY, Appellant,**

v.

**Patricia Roberts HARRIS, Secretary of Health and Human Services, Appellee.**

**No. 80–1449.**

United States Court of Appeals, Fourth Circuit.

Argued Jan. 9, 1981.

Decided April 9, 1981.

**144**

George H. Thomason, Spartanburg, S. C. (Thomason & French, Spartanburg, S. C., on brief), for appellant.

Holly A. Grimes, Asst. Regional Atty., Dept. of Health and Human Services, Atlanta, Ga. (Thomas E. Lydon, Jr., U. S. Atty., Columbia, S. C., Carl H. Harper, Regional Atty., Dept. of Health and Human Services, Atlanta, Ga., on brief), for appellee.

Before RUSSELL, HALL, and MURNAGHAN, Circuit Judges.

MURNAGHAN, Circuit Judge:

Once again we confront the reality that the scope of our review of a decision of the Secretary of Health and Human Services holding an applicant for social security benefits not to have qualified is extremely limited. If there is substantial evidence to support the decision, it is our duty to affirm without regard to what result we would have preferred to reach ourselves, were we dealing with the issue afresh. 42 U.S.C. § 405(g).

The medical evidence, while conflicting, supported the conclusion that the applicant Frady was possessed of capabilities sufficient to permit him to perform "sedentary work" as that term is defined in the Secretary's regulations, 20 C.F.R. § 404.1510(b).[1]

The record also contains evidence permitting the Secretary's finding that the applicant's previous employment, especially as the owner of a tree service and right-of-way contractor,[2] imparted skills that were transferable. See 20 C.F.R. § 404.1513, Rule 201.03, Table No. 1 of Appendix 2, Subpart P; 20 C.F.R. § 404.1511(e).

That being so, and the existence in the economy of jobs which a person with such qualifications could fill being established by administrative notice, see 20 C.F.R. § 404.-1509, we are left with no alternative but to affirm the Secretary's determination that the applicant was not disabled, for purposes of determining his eligibility for regular disability benefits.[3] *Stephens v. Harris*, 628 F.2d 1353 (5th Cir. 1980) (unpublished opinion); *Smith v. Harris*, W.D.Tex. No. MO–80–CA–27 (Nov. 7, 1980); *Lowery v. Secretary of Health, Education and Welfare*, D.S. Car. No. 79–1715–8 (Oct. 24, 1980); *Melvin v. Harris*, M.D.Tenn. No. 79–3552 (July 15, 1980); *Stallings v. Harris*, 493 F.Supp. 956, 959 (W.D.Tenn.1980); cf. *McLamore v. Weinberger*, 538 F.2d 572 (4th Cir. 1976); but see *Schmidt v. Harris*, N.D.Iowa, No. C 79–2080 (June 19, 1980) ("The Secretary should not be permitted to, in effect, manufacture her own evidence."); *Williams v.*

---

1. *Sedentary work.* Sedentary work entails lifting 10 pounds maximum and occasionally lifting or carrying such articles as dockets (e. g., files), ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

2. The previous employment involved supervising the work of numerous employees (in excess of 100).

3. We do not mean to suggest that in every case the Secretary can altogether dispense with vocational expert testimony to establish the exist-

ence of work in the national economy which an applicant was capable of performing. See *Gillstrap v. Harris*, N.D.Ga. No. C 79–1684A (Dec. 5, 1980); *Moguez v. Harris*, D.Colo. No. 80–A–170 (Oct. 20, 1980); *Cannon v. Harris*, M.D.N.Car. No. C–79–723S (Sept. 25, 1980); *Phillips v. Harris*, 488 F.Supp. 1161 (W.D.W. Va.1980) (holding the Secretary's determination unsupported by substantial evidence, but specifying: "The opinion of the court should not be read to indicate that testimony of vocational experts is always necessary....."); *Long v. Harris*, W.D.Va. No. 79–0214R (Nov. 28, 1979). We decide only the case immediately before us.

*Harris,* W.D.N.Car., 500 F.Supp. 214 (1980); *Santise v. Harris,* D.N.J. No. 80–131, 501 F.Supp. 274 (1980); *Ockunzzi v. Secretary of Health, Education and Welfare,* M.D.Pa. No. 79–1292 (Nov. 18, 1980); *Broz v. Harris,* S.D.Ala. No. 80–0156–H (Dec. 1, 1980) (appeal pending); *Holmes v. Harris,* S.D.Ala. No. 79–0730–H (Dec. 11, 1980) (appeal pending).[4]

It is understandable that, in an individual case like that of Thomas Frady, the use of administrative tables (commonly called the "grid"), in lieu of live testimony from a vocational expert, may appear to the claimant a lessening of attention, a lowering of quality in the services performed by the agency, uniformly to the detriment of applicants. That overlooks, however, that measurement by the regulations may, in fact, in many cases enhance the likelihood of qualification by applicants for benefits. *E. g. Hicks v. Califano,* 600 F.2d 1048, 1050 (4th Cir. 1979); *Vega v. Harris,* 636 F.2d 900 (2d Cir. 1981) ("But the Secretary cannot have it both ways. She cannot escape what may be the conclusive effect of the rules in this case while depending on them to guide and control the discretion of the ALJs in other cases.").

It is important to realize that the decision of the Secretary proceeds from broadly based regulatory "medical vocational guidelines"[5] dealing with what constitutes capacity to perform and with the availability of particular types of employment. A decision such as the present one is not, therefore, to be confused with one where the attempt to rely on administrative notice in lieu of expert testimony antedated adoption of the new regulatory guidelines, *see Taylor v. Weinberger,* 512 F.2d 664, 668 (4th Cir. 1975), *contrast Terry v. Harris,* S.D.Ohio No. C–2–80–145 (Dec. 15, 1980); *Vincent v. Harris,* W.D.Ky. No. 79–0050–BG (Dec. 24, 1980). Nor is the present case one where

the administrative notice was attempted, not on the basis of the broad regulations, but in reliance on some nonspecific knowledge of the ALJ, *see Wilson v. Califano,* 617 F.2d 1050, 1053 (4th Cir. 1980).

*AFFIRMED.*

K. K. HALL, Circuit Judge, dissenting:

The Secretary's decision in this case is so inadequate and unsubstantiated that I am dismayed by the majority's affirmance. The Secretary has exhibited a complete disregard of the procedural standards adopted by this Court, all under the guise of an administrative table purportedly designed to save time and money. In this case, the table undoubtedly saved time and money, but unfortunately did so at Frady's expense.

Frady has now been through the administrative process twice. The first decision concluded—in language which can be charitably characterized as vague—that Frady was not precluded from pursuing "any substantial gainful activity . . . ." This decision was properly reversed because of the Secretary's failure to make specific vocational findings to consider Frady's subjective complaints.

Regrettably, the Secretary did little better on the second attempt. The administrative law judge found that Frady was an individual of advanced age, possessed a limited education (7th grade), "was unable to perform some of the heavier work he had previously performed," and was physically capable of performing sedentary work. As for Frady's residual skills, the Secretary found:

"(10) The claimant's previous employment (especially as owner of a tree service and right-of-way contractor) imparted skills that were transferable on or before March 31, 1975 to work other than that he had previously performed."

---

4. The two Alabama district court cases, closely interrelated, rely, to a prominant degree, on a supposed failure of the Secretary's regulations to comply with Administrative Procedure Act requirements. No such attack was mounted in the present case. Nor did Frady argue that notice by the ALJ of an intention to rely on administrative notice was insufficient. *Cf. Fruge v. Harris,* 631 F.2d 1244 (5th Cir. 1980); *Mason v. Harris,* N.D.Tex. No. 3–80–0873–H (Dec. 23, 1980).

5. *Adopted February 26, 1979.*

Regarding the jobs which Frady could perform, the Secretary stated:

"(12) The claimant's non-exertional limitations did not significantly affect his maximum sustained work capability for sedentary work (on or prior to March 31, 1975), and therefore, considering the claimant's residual functional capacity within the framework of the above rules, the claimant is also found 'not disabled' on or before March 31, 1975."

Though the ALJ made no finding regarding the availability of these "jobs," the Appeals Board stated that their availability was administratively noticed in the Regulations.

On appeal to the district court, the magistrate found that the Secretary's conclusion that Frady's skills were transferable was totally unsupported by the evidence. He noted that the Secretary gave no consideration to the "vocational adjustments required in terms of tools, work processes, work settings, or industry." However, the magistrate's finding was rejected by the district court.

This Court has long required the Secretary to make specific findings regarding a particular claimant's skills. *Taylor v. Weinberger*, 512 F.2d 664 (4th Cir. 1975). Here, the Secretary blithely concluded that Frady's experience as the "owner of a tree service and right-of-way contractor" imparted transferable skills. While these labels sound impressive, we are left to guess at the precise nature of those skills. Indeed, Frady testified that he had "some" managerial and administrative duties; again, the exact nature of these duties was never developed on the record. To the contrary, the substance of Frady's testimony shows that he spent practically all of his time in the field, walking along power company right-of-ways to see how much work needed to be done and how it was progressing. These are the very activities which Frady was found to be presently incapable of performing because of his disability. The actual supervision of the workers was done by foremen. The reports, time sheets, payrolls and other paperwork were performed by secretaries and accountants. In short, the record compels the conclusion that Frady's experience imparted only skills which he could no longer perform.

Having failed to enumerate Frady's skills, the Secretary next fails to specify the jobs to which these "skills" are transferable. In *Smith v. Califano*, 592 F.2d 1235 (4th Cir. 1979) we held that the Secretary must set forth the specific jobs which the claimant can perform, especially when the claimant is advanced in years and requires continuous medication. In *Smith*, the administrative law judge concluded that "certainly there are thousands of jobs [the claimant] could perform not requiring these activities." *Id.* at 1236. Here, however, the majority has permitted the Secretary to find that Frady can perform "sedentary work," a conclusion which is demonstrably meaningless in this context.[1] Needless to say, without an enumeration of specific jobs we cannot evaluate on appeal whether such jobs are available in the economy.

In the final analysis, this decision is a perfect example of the mechanical application of administrative regulations without concern for the fundamental concepts of disability evaluation. Regardless of the regulations, the Secretary is obligated to set forth the claimant's specific skills, the specific jobs for which the claimant qualifies, the availability of those jobs, and the basis for each such finding. In many cases these obligations will require the use of vocational experts, especially when a claimant's skills are somewhat illusory, as in the case of Frady. The Secretary did not begin to meet this burden, even after a second attempt. Accordingly, I would reverse the Secretary's decision.

1. In addition to the exertional limitations noted by the majority, p. 144, n.1, the Regulations describe "sedentary work" as encompassing "the skilled, semi-skilled, professional, administrative, technical, clerical, and benchwork classifications." 20 C.F.R. § 404.1513, Rule 201.00, Subpart P, App. 2. Such a vast and all-encompassing description is clearly insufficient under our decision in *Smith*.